IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SAMUEL SIRVOY WARD, #245005, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 2:20-CV-482-RAH-CSC ) |
| MONICA MCCOY, et al., | ) ) |
| Defendants. | ) ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Samuel Sirvoy Ward filed this *pro se* 42 U.S.C. § 1983 action in July 2020. *See* Doc. 1. Thereafter, Plaintiff filed an Amended Complaint, which became the operative pleading in this action. Doc. 14. Defendants then filed a Special Report and Answer (Doc. 37), in which they move for summary judgment, and Plaintiff filed a response (Doc. 43). Upon consideration of the parties' submissions, and for the reasons set forth below, the undersigned RECOMMENDS that Defendants' Special Report be construed as a motion for summary judgment; the motion be GRANTED; and this case be DISMISSED with prejudice.

**I.    THE AMENDED COMPLAINT**

Plaintiff brings this suit against Monica McCoy, Nathaniel Lawson, Anthony Crittenden, Bernard Spann, Kelvin B. Key, Ronald E. Price, and Jonathan Bratfort[1], all of whom were employed at Easterling Correctional Facility at the time of the alleged events.

---

[1] Misspelled in the Amended Complaint and on the docket as "Bradfort."

Doc. 14 at 1, 2. He alleges that, on or around June 4, 2020, he was handcuffed and shackled while waiting to be processed into the Restrictive Housing Unit. *Id*. at 3. After waiting "for up to (8) eight hours" to be processed, Defendant Price "opened an unauthorized holding area which held (10) ten detained inmates who rushed out and brutally assaulted" Plaintiff. *Id*. Plaintiff claims Defendants Spann, Keys, Price, Crittenden, and Bratfort witnessed the assault, which was "not intervilened [sic] until [they] finally got together, which in truth took around (5) five minutes." *Id*. He claims that "all of this [was] due to overcrowding." *Id*.

Based on the above allegations, Plaintiff claims that Defendants were deliberately indifferent and failed to protect him in violation of the Eighth Amendment.[2] *Id*. at 2, 3. As relief, he seeks monetary damages and for a "petition for release order to be issued . . . due to overcrowding." *Id*. at 4.

## II.   MOTION BEFORE THE COURT

On December 29, 2020, the Court issued an Order directing Defendants to file a Special Report addressing Plaintiff's claims (Doc. 15), which Defendants did on March 15, 2021 (Doc. 37). In their Special Report, Defendants move for summary judgment and

---

[2] It appears that Plaintiff also purports to bring a state law negligence claim. *See* Doc. 1 at 2, 4. However, as will be addressed below, Plaintiff has failed to state a 42 U.S.C. § 1983 claim against any of the named defendants, and the Court should therefore decline to exercise supplemental jurisdiction over Plaintiff's remaining purported state law claim. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Arnold v. Tuskegee Univ.*, 212 F. App'x 803, 811 (11th Cir. 2006) ("When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims.") (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)); *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law.").

provide evidentiary materials in support. *Id.* On May 3, 2021, Defendants filed a Supplemental Special Report and additional evidentiary materials. Doc. 41. On May 4, 2021, the Court issued another Order directing Plaintiff to file a response to Defendants' filings (Doc. 42), which the Court received on May 13, 2021 (Doc. 43). In its May 4 Order, the Court notified the parties that, absent any objections, it may thereafter treat Defendants' Special Report, as supplemented, and Plaintiff's response as a motion for summary judgment and response. Doc. 42 at 3. No objections were filed. Thus, the Special Report may now appropriately be construed as a motion for summary judgment.

## III.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of

3

'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—

including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## IV.   RELEVANT FACTS[3]

The following facts derive from Plaintiff's verified Amended Complaint (Doc. 14)[4]; the sworn evidentiary materials attached to Defendants' Special Report and Supplemental

---

[3] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.") (citation omitted).

[4] *See Walker v. Poveda*, 735 F. App'x 690 (11th Cir. 2018) ("[P]leadings verified under § 1746 are admissible (and may substitute for sworn affidavits) on summary judgment.").

Special Report (Docs. 37-1 through 37-10; 41-1 through 41-7); and Plaintiff's verified affidavit in response (Doc. 43-1).

As noted above, the Amended Complaint provides that, on or around June 4, 2020, while Plaintiff was in restraints and awaiting processing into the Restrictive Housing Unit at Easterling, Defendant Price "opened an unauthorized holding area" from which ten inmates "rushed out and brutally assaulted" Plaintiff. Doc. 14 at 3. Defendants Spann, Keys, Price, Crittenden, and Bratfort all intervened and put an end to the assault, but Plaintiff claims that took "up to" or "around (5) five minutes." *Id*.

In response, Defendants proffer evidence—including their own sworn affidavits, an Incident Report, and Plaintiff's medical records following the assault—which sets forth the following version of events. On June 4, 2020, at approximately 12:35 a.m., Defendants Crittenden and Price were conducting an institutional count inside the Restrictive Housing Unit Lobby. Defendants Crittenden and Price opened the group room door in the Lobby area to conduct the inmate count, at which time four white inmates rushed through the door, past Defendants Crittenden and Price, and began assaulting Plaintiff and three other black inmates who were sitting in the Restrictive Housing Unit Lobby.

Defendant Crittenden placed one of the assailants on the floor and restrained him, and that assailant was returned to the group room. Docs. 37-2 at 1; 37-3 at 1; 37-6 at 1; 37-8 at 1. Defendant Lawson grasped the second assailant by the waist area and returned him to the group room. *Id*. Defendant Price grasped the third assailant by the right arm and returned him to the group room. Docs. 37-2 at 1; 37-3 at 2; 37-6 at 1; 37-8 at 1. Defendant Spann grasped the fourth assailant by both arms and returned him to the group room. *Id*.

6

Defendant Lawson secured the group room door. Docs. 37-3 at 2; 37-6 at 1–2; 37-8 at 1. Defendant Bratfort assisted in restraining inmates. Docs. 37-4 at 1; 37-7 at 1. Defendant Key has no personal knowledge of the incident, and the situation was under control by the time he arrived on the scene. Doc. 37-5. All inmates were quickly separated by Defendants, and the entire incident lasted approximately two minutes. Doc. 37-2 at 1–2.

Within ten minutes of the start of the assault, Defendants Lawson and Spann escorted Plaintiff to the Health Care Unit for a medical assessment, and it was determined that he received no injuries as a result of the attack. Docs. 37-1; 37-2 at 1–2; 37-8 at 1; 37-9. Also, within minutes of the start of the assault, Defendant McCoy, Investigator Leroy Dale, and Director Cheryl Price were notified of the incident. Doc. 37-8 at 1. Following an investigation, Defendant McCoy determined that the four assailants rushed to attack Plaintiff and the other inmates awaiting placement in the Restrictive Housing Unit Lobby. Doc. 37-10. The incident was found to be racially motivated. *Id*. When questioned, the white assailants admitted to seeing an opportunity to retaliate against black inmates for a previous incident. *Id*. The assailants further admitted to rushing prison officials to attack Plaintiff and the other inmates in the Lobby. *Id*. All Defendants aver that they had no prior knowledge that the assailants posed a risk to attack Plaintiff or the other inmates in the Lobby. Docs. 41-1 at 2; 41-2 at 1; 41-3 at 2; 41-4 at 1; 41-5 at 2; 41-6 at 1; 41-7 at 1.

In his verified affidavit in response to Defendants' Special Report, Plaintiff does not refute that Defendants responded to the assault promptly and reasonably. However, he claims that it is his "belief that all [D]efendants knew of [a] racial riot that took place on June 3, 2020" at Easterling and that, "due to [the assailants'] previous racial riot, [they]

7

should have been handcuffed from behind their back and leg shackle too." Doc. 43-1 at 2–3. He further avers that, on June 5, 2020, he "put [in] a sick call request complaining about all of the pain [he] was enduring due to the brutal assault and battery upon [him]." *Id*. at 3. However, "[t]he ADOC Personnel at Easterling . . . refused to get [him] the medical help he needed." *Id.* Although he "complained to several ADOC personnel about his medical condition[,] they still refused to take [him] to his medical appointments." *Id*.

## V.   DISCUSSION

### a.   Claims against Defendants McCoy and Lawson

As an initial matter, Plaintiff fails to state any factual allegations regarding two of the named Defendants. As far as the Court can discern, the Amended Complaint does not mention any specific conduct, or lack thereof, by Defendants McCoy and Lawson. *See generally* Doc. 14. The Eleventh Circuit has demonstrated that dismissal of defendants is proper where a complaint fails to state any allegations that associate the named defendants with a constitutional violation. *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (citing *Pamel Corp. v. Puerto Rico Highway Auth.*, 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that a pleading must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (citation omitted). Accordingly, because the Amended Complaint fails to state any allegations whatsoever associating Defendants McCoy and Lawson with a constitutional violation, Plaintiff's purported claims against these Defendants should be DISMISSED.

### b.   Claim for Monetary Damages against Defendants Crittenden, Spann, Key, Price, and Bratfort in their Official Capacities

Second, to the extent Plaintiff seeks monetary damages from Defendants Crittenden, Spann, Key, Price, and Bratfort in their official capacities, he is not entitled to such relief. Official capacity suits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). The Eleventh Circuit has specifically recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, to the extent Plaintiff seeks monetary damages from Defendants Crittenden, Spann, Key, Price, and Bratfort in their official capacities, Defendants are entitled to sovereign immunity.[5] *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277–78 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace*

---

[5] Additionally, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Carr*, 916 F.2d at 1525 n.3 ("[S]tate officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983."); *Dees v. Lamar*, No. 2:20-CV-1326-LSC-GMB, 2021 WL 1953137, at *5 (N.D. Ala. Mar. 4, 2021) ("Prison wardens and their officers, all of whom are employed by the Alabama Department of Corrections, are state officials[.]") (citing *Jacoby v. Thomas*, No. 18-14541-C, 2019 WL 5697879, at *1 (11th Cir. Oct. 16, 2019)).

*Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from a state official sued in his official capacity).

### c. Eighth Amendment Claims against Defendants Crittenden, Spann, Key, Price, and Bratfort in their Individual Capacities

Third, the Court interprets Plaintiff's allegations as attempting to state an Eighth Amendment failure to protect and failure to intervene claim against Defendants Crittenden, Spann, Key, Price, and Bratfort in their individual capacities. However, he has failed to establish a genuine issue of material fact sufficient to overcome summary judgment as to either claim.

#### i. <u>Failure to Protect Claim</u>

The Eighth Amendment imposes a duty upon prison officials to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (citations omitted). However, it is well-established that not every injury suffered by an inmate at the hands of another "translates into constitutional liability for prison officials responsible for [the inmate's] safety." *Id*. at 834; *see Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). To state a viable claim under the Eighth Amendment, "there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (*quoting Wright v. El Paso Cnty. Jail*, 642 F.2d 134, 136 (5th Cir. 1981)).

A constitutional violation occurs only if a prison official is deliberately indifferent to a known risk of objectively, sufficiently serious harm to an inmate. *Farmer*, 511 U.S. at

10

834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection."). A risk is "known" only if the prison official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he . . . also draw[s] th[at] inference." *Farmer*, 511 U.S. at 837 (emphasis added). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" is insufficient to establish liability. *Id*. at 838. Moreover, the risk of harm to the inmate must be a "strong likelihood, rather than a mere possibility." *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (citation omitted).

The evidence before the Court fails to demonstrate that any Defendant knew Plaintiff was at risk of serious harm prior to the assault. Defendants have each sworn that they had no prior knowledge that the assailants posed a risk to attack Plaintiff or the other inmates in the Lobby. Docs. 41-1 at 2; 41-2 at 1; 41-3 at 2; 41-4 at 1; 41-5 at 2; 41-6 at 1; 41-7 at 1. In response, Plaintiff states simply that it is his "belief that all [D]efendants knew of [a] racial riot that took place" the previous day. Doc. 43-1 at 3. However, "[a] party's mere 'belief' . . . or speculation is not based on personal knowledge and is not competent summary judgment evidence." *Riley v. Univ. of Ala. Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) (citing *Gen. Longshore Workers, Int'l Longshoremen Ass'n, Loc. 1988 v. Pate Stevedore Co.*, No. 91-30292-RV, 1993 WL 603297, at *8 (N.D. Fla. Dec. 30, 1993) *aff'd sub nom. Gen. Longshore v. Pate Stevedore*, 41 F.3d 668 (11th Cir. 1994) (holding that a party's belief does not satisfy the personal

11

knowledge requirement because "[b]elief, no matter how sincere, is not equivalent to knowledge")).

Moreover, even if each Defendant did in fact know of a racial riot that took place the day prior, that fails to establish that they also knew that Plaintiff—who, presumably, took no part in the riot—was subsequently at risk of harm the day after the riot had concluded. *See Edwards*, 867 F.2d at 1276; *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (maintaining that a "mere possibility" of harm is not enough to state an Eighth Amendment claim and that the plaintiff must instead "plausibly allege a strong likelihood of serious harm").[6] Thus, because Plaintiff has failed to produce any evidence that Defendants actually knew of a strong likelihood of substantial harm to him prior to the assault, their failure to prevent the assault does not constitute an Eighth Amendment violation. Accordingly, Defendants are entitled to summary judgment on Plaintiff's failure to protect claim.

---

[6] Additionally, to the extent Plaintiff purports to allege a known risk of general inmate-on-inmate violence, he has not done so. In *Marbury v. Warden*, 936 F.3d 1227 (11th Cir. 2019), a plaintiff averred that he had personally witnessed 15 gang-related inmate stabbings and had made several requests to be transferred to another dorm due to his being an "over-rated gang affiliated block" prior to an incident in which he was stabbed. *Id*. at 1231. The Eleventh Circuit panel majority found that evidence insufficient to establish deliberate indifference based on a general risk of inmate-on-inmate violence. *Id*. at 1235. The panel majority expounded that, in cases where the Eleventh Circuit had previously "held that a generalized risk of violence from a prison population could support a claim of deliberate indifference to a substantial risk of serious harm, the plaintiff has pointed to specific features of a facility or its population rendering it particularly violent." *Id*. The panel majority stated that, even if the plaintiff had demonstrated a risk of generalized prison violence, he had failed to identify "specific features of the prison that would make it particularly violent." *Id*. Similarly, the undersigned in this case finds that Plaintiff's vague allegations of overcrowding and a single violent episode prior to his assault fails to establish a known risk of general inmate-on-inmate violence.

ii.     Failure to Intervene Claim

Furthermore, once Defendants became aware of the assault, the evidence fails to demonstrate that any Defendant acted with deliberate indifference. *See Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (applying deliberate indifference standard to claim that prison official failed to intervene in inmate-on-inmate assault); *Brown*, 894 F.2d at 1537 ("Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort.") (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

Plaintiff does allege that "the assault was witnessed by the herein mentioned officers[] and not intervriened [sic] until Sgt. Spann, COI Keys, COI Price (who fled the altercation), COI Crittenden, and COI Bradfort finally got together, which in truth took around (5) five minutes." Doc. 14 at 3. And it is true that "alleging that a significant amount of time elapsed between [a plaintiff's] physical assault and the defendants' intervention" may, in certain circumstances, demonstrate an unreasonable response to a known risk of harm. *Johnson v. Boyd*, 568 F. App'x 719, 724 (11th Cir. 2014). However, in this case, there is no evidence, other than Plaintiff's single, unsupported averment that the incident lasted "up to" or "around" five minutes, that Defendants engaged in any unconstitutional conduct.

Even accepting Plaintiff's version of events as true—that the entire incident lasted approximately five minutes rather than two minutes, as Defendants claim—that alone fails to establish deliberate indifference. *See, e.g., Ellis*, 432 F.3d at 1326 ("[M]ere conclusions

13

and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."). Plaintiff acknowledges that Defendants collectively "got together" to put an end to the assault, and there are no allegations or evidence to suggest that, before or during that time, any Defendant simply observed the assault without taking corrective action. Indeed, the Incident Report states that the assault began at 12:35 a.m. and that the incident was reported at 12:36 a.m. Doc. 37-8 at 1. It further provides—and Defendants reiterate in their sworn affidavits—that Defendant Crittenden placed one of the assailants on the floor, restrained him, and returned him to the group room; that Defendant Lawson grasped the second assailant by the waist area and returned him to the group room; that Defendant Price grasped the third assailant by the right arm and returned him to the group room; that Defendant Spann grasped the fourth assailant by both arms and returned him to the group room; that Defendant Bratfort assisted in restraining the assailants; and that Captain Lawson then secured the group room door. *Id*. Defendant Lawson avers that the inmates were "quickly separated." Doc. 37-2 at 1. The evidence further establishes that, within ten minutes of the start of the assault, Plaintiff and the other victims were escorted to the Health Care Unit for a medical assessment, at which time Plaintiff reported no injury and no visible injuries were found.[7] *Id*.; Doc. 37-9 at 1.

      Plaintiff does not refute any of that evidence in his responsive affidavit, nor does he provide any further evidence to contest those claims. He neither mentions the length of

---

[7] Indeed, the only noted injury to any of the victims was a superficial laceration on another victim's arm. Doc. 37-8 at 1.

time it took Defendants to begin subduing his assailants nor suggests that the way in which his assailants were subdued was improper. He proffers nothing to demonstrate that any specific Defendant was in a position to intervene but failed to do so[8] or that any specific Defendant acted in a way that violated his constitutional rights.[9] Instead, he simply provides new allegations—which will be discussed below—that, the day after the assault, unidentified "ADOC personnel" refused to provide him necessary medical help. Doc. 43-1 at 3. Thus, without more than a single, unsupported allegation that the assault lasted up to or around five minutes—such as any demonstration of deliberate indifference during that time—one cannot reasonably conclude that Defendants violated Plaintiff's constitutional rights.[10] Accordingly, Defendants are entitled to summary judgment on Plaintiff's failure to intervene claim.

---

[8] To incur liability for failure to intervene, a prison official "must have been in a position to intervene." *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)); *see also Glispy v. Raymond*, No. 06-14269-CIV, 2009 WL 2762636, at *3 (S.D. Fla. Aug. 28, 2009) (holding that an official who fails to intervene in a fight between inmates can only be held liable if he "was physically able and had a realistic chance to intervene"). Plaintiff bears the burden of making that showing. *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012).

[9] *See Averhart v. Kendrick*, No. 2:11-CV-02567, 2014 WL 771126, at *4 (N.D. Ala. Feb. 25, 2014), *aff'd sub nom. Averhart v. Warden*, 590 F. App'x 873 (11th Cir. 2014):

> [C]ourts have consistently recognized that "no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence." *L[o]ngoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006).[] The fact that the defendant chose not to risk potentially serious injury by immediately jumping into the fray does not equate to deliberate indifference. *See MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir. 1995).[] [C]ourts have recognized as legitimate a prison policy which allows guards to call for assistance before intervening in inmate fights or assaults.

[10] To the extent Plaintiff believes any Defendant was negligent in allowing the assault to occur or in his or her response to the assault, mere negligence is insufficient to support a claim under the Eighth Amendment. *See, e.g., Losey v. Warden*, 521 F. App'x 717, 719–20 (11th Cir. 2013) (holding prisoner's allegation that two correctional officers failed to follow procedures regarding an official count of inmates and thus failed to protect him from assault by a fellow inmate did not rise to the level of deliberate indifference and instead

15

### d.     Potential Additional Claims

Finally, the Court will address Plaintiff's allegations that he waited "for up to (8) eight hours" to be processed (Doc. 14 at 3) and that he was denied adequate medical treatment the day after the assault (Doc. 43-1 at 3). To the extent Plaintiff seeks to state a claim based on either of these allegations, he has failed to do so.

As to his claim that he waited eight hours to be processed, he states only that he "requested a supervisor" during that time but his "requests fell on deaf ears." Doc. 14 at 3. He does not identify any individual to whom he made that request or who denied the request. As to his later claim that he was denied medical treatment, he states only that he put in a sick call request the day after the assault, but "[t]he ADOC Personnel at Easterling . . . refused to get [him] the medical help he needed" and, although he "complained to several ADOC personnel about his medical condition[,] they still refused to take [him] to his medical appointments." Doc. 43-1 at 3. Once again, Plaintiff does not identify any particular individual—let alone Defendant—from whom he sought medical help or who denied him help. Thus, based on these allegations, it is not clear to the Court that any of the named Defendants were involved in any misconduct. As such, any purported claims based on these allegations must fail.

## VI.     CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that:

---

was, at most, a form of negligence); *Brown*, 894 F.2d at 1537 ("Merely negligent failure to protect an inmate from attack does not justify liability under section 1983.").

1. Defendants' Special Report (Doc. 37) be construed as a motion for summary judgment;

2. the motion be GRANTED; and

3. this case be DISMISSED with prejudice.

It is further ORDERED that, on or before July 11, 2023, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 27th day of June, 2023.

                                  /s/ Charles S. Coody
                                  CHARLES S. COODY
                                  UNITED STATES MAGISTRATE JUDGE